UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Jonathan A. Smith,

    Plaintiff,

v.                                    CASE NO._____

American Vehicle Protection Corp,
Tony Allen Gonzalez, Charles Gonzalez,
and Daniel Kole,

    Defendants,
_____/

**CLASS ACTION COMPLAINT**

1. Like most Americans, Plaintiff Jonathan Smith ("Jonathan") has a mobile cellular telephone.

2. He uses his phone to receive and make important calls, to get emergency information and to receive and send messages to family members and friends. He uses his phone regularly for his personal enjoyment.

3. Defendant American Vehicle Protection Corp ("AVP") is a company that sells auto warranties.

4. AVP is run and operated by Defendants Tony Allen Gonzalez, Charles Gonzalez, and Daniel Kole, who are the owners, officers, and/or managers of AVP.

5. AVP bombards unsuspecting consumers nationwide with annoying, deceptive, automated calls selling auto warranties.

6. Jonathan's privacy and phone have been invaded by relentless telemarketing calls from "AVP" in an attempt to sell him an auto warranty.

7. Jonathan has no relationship with AVP, has no account with AVP, has never provided any phone number to AVP, and has never consented to AVP sending any type of communication.

8. Jonathan has tried to eliminate the harassment and invasion of privacy from unauthorized calls by registering on the National Do Not Call Registry ("DNCR"), but even that did not work.

9. AVP harasses people nationwide with these illegal calls. Earlier this year, the Federal Trade Commissions sued Defendants for their "deceptive" telemarketing and for calling people on the DNCR with the exact same type of calls.

10. Yet, Defendants simply continue to blast illegal calls without caring if consent was obtained or if the recipient was on the DNCR.

11. Auto warranty calls are the #1 robocall complaint the Federal Communications Commission receives from consumers. *Data Spotlight: Top Robocall Complaints in 2021*, https://www.fcc.gov/data-spotlight-top-robocall-complaints-2021 (last accessed July 21, 2022).

12. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the Defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

13. In addition to violating the TCPA, these calls also violate the Florida Telephone Solicitation Act ("FTSA").

14. Jonathan brings this action for himself and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this District.

17. This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

## PARTIES

18. Jonathan is a resident of St. Lucie County, Florida.

19. AVP is a Florida corporation with its principal place of business in Broward County, Florida.

20. Defendant Tony Allen Gonzalez is a resident of Broward County, Florida.

21. Defendant Charles Gonzalez is a resident of Orange County, Florida.

22. Defendant Daniel Kole is a resident of Broward County, Florida.

## FACTUAL ALLEGATIONS

23. Jonathan is the residential subscriber of the phone number 772-236-4117. Jonathan uses this number only for personal use and does not use it in any business.

24. On May 1, 2020, Jonathan registered 772-236-4117 on the DNCR to stop telephone solicitations.

25. Jonathan receives an average of two to three telephone spam calls every day to his phone number 772-236-4117. The calls come from many different phone numbers. Spammers call from different numbers to avoid a consumer blocking their illegal calls.

26. Not only are the numbers different, but many of the numbers are spoofed.

27. When Jonathan calls the numbers back, even on the same day, the numbers are typically disconnected or do not ring.

28. On March 8, 2022, Jonathan answered one of these calls to try to figure out who was calling. The call was from 239-236-9251 at 6:57 PM EST.

29. The unknown caller was selling auto warranties.

30. The caller hid their personal identity and the identity of the company, even though Jonathan asked who was calling.

31. The only way to identify who was calling was to purchase the purported auto warranty, which Jonathan did for the sole purpose of uncovering the spammer.

32. After purchasing the "auto warranty," Jonathan received materials in the mail that said AVP was the seller of the policy.

33. Jonathan never provided his number 772-236-4117 to AVP, never had a relationship with AVP, and never gave permission to AVP to send any type of telemarketing.

34. Jonathan received multiple, and likely even hundreds, of calls from AVP. However, Jonathan is currently unable to ascertain the exact number of calls because AVP called from many different telephone numbers and hid their identity.

35. AVP made the calls using an automated dialer. This is based on the following facts:

   i. When Jonathan answered the call on March 8, 2022, there was a pause and a click before the telemarketer started talking. This happens when the system automatically makes calls and only connects a live agent once someone answers;

   ii. AVP spoofed their telephone number when calling;

   iii. Jonathan never provided his number to AVP, suggesting AVP randomly generated his number; and

   iv. The phone numbers spammed by AVP appear to be randomly or sequentially stored and produced not from information consensually provided to Defendants, but from bots, public data sources, or some other means as Jonathan did not provide AVP with his number.

36. On information and belief, AVP has initiated these same calls to thousands of people.

37. AVP is run and operated by Defendants Tony Allen Gonzalez, Charles Gonzalez, and Daniel Kole, who are the owners, officers, and/or managers of AVP.

38. On information and belief, these three individual Defendants have authorized and overseen the illegal activity of AVP.

39.     These three individual Defendants know that AVP is engaged in illegal conduct but have continued to authorize the illegal conduct notwithstanding.

40.     Each of these three individuals are named Defendants in *Federal Trade Commission v. American Vehicle Protection Corp., et al.* FLSD 0:22-cv-60298-RAR. The FTC suit states that these three Defendants call people on the Do Not Call Registry in violation of the law. Each of these three individual Defendants were served with the summons and complaint in the FTC suit by February 19, 2022. Yet three weeks later, on March 8, 2022 when Jonathan answered the spam call, AVP was still spamming people on the Do Not Call Registry. These three individual Defendants knew their conduct was in violation of the law, but they continued to authorize and engage in the illegal activity.

41.     These calls have caused Jonathan frustration, stress, anxiety, and worry about scammers. The calls hinder Jonathan from determining the purpose of the call, from making a do-not-call request, and from monitoring compliance with the TCPA and other laws. The calls cause Jonathan to avoid looking at his phone when it may be important. The calls dimmish the value of Jonathan's phone and Jonathan's enjoyment of life. In short, the calls invade Jonathan's privacy and cause a nuisance, an annoyance, and an intrusion into Jonathan's seclusion.

## LEGAL STANDARD

42.     **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

43.     **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

44. **Personal Liability**. An individual may be personally liable for TCPA violations when personally involved in making or authorizing the calls. 47 U.S.C. § 217; *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013).

45. **Florida Automated Calls.** Under the FTSA, "a person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059 (8)(a).

46. **Florida Spoofed Numbers.** Under the FTSA, "it shall be unlawful for any person to make a telephonic sales call or cause a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number." Fla. Stat. § 501.059 (8)(b). In addition, "If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which telephonic sales call was placed." Fla. Stat. § 501.059 (8)(b). *Id*.

## CLASS ACTION ALLEGATIONS

47. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and four Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

48. Class Definitions. Plaintiff proposes the following Classes:

> **Do Not Call Class**
> All people in the United States who (1) Defendants made more than one telephone solicitation within any 12-month period, (2) to their residential cellular telephone number, (3) while that number was listed on the national Do Not Call Registry, (4) four years from the filing of this action through the date of class certification.

**Failure to Identify Class**
All people in the United States (1) Defendants made more than one call within any 12-month period, (2) to their residential telephone, (3) without disclosing the identity of the individual caller and the identity of the entity on whose behalf the call was made, (4) four years from the filing of this action through the date of class certification.

**Florida Autodialed Class**
All Florida residents with (1) telephone numbers having a Florida area code (2) to whom Defendants made a call (3) using the same equipment or type of equipment utilized to call Plaintiff, (4) since July 1, 2021, through the date of class certification.

**Florida Spoofed Calls Class**
All Florida residents with (1) telephone numbers having a Florida area code (2) who received calls from Defendants (3) in which the originating telephone number was inaccurate or incapable of receiving telephone calls that connect the original call recipient, (4) since July 1, 2021, through the date of class certification.

49. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

50. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

51. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact

size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

52.     **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

53.     There are questions of law and fact common to the proposed Classes. These questions include, inter alia:

   i.    Did they receive a call from Defendants?
   ii.   Was the number called registered on the Do Not Call Registry?
   iii.  Did Defendants use an "automated system" as expressed by Fla. Stat 501.059(8)(b)?
   iv.   Were the text messages for an emergency purpose?
   v.    Did the text messages properly identify the sender?
   vi.   Were the actions willful or knowing?

54.     **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

55.     Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members' claims arise from the same conduct of Defendants: calls were

sent to people on the DNC registry, with no identification of the sender, and sent using an ATDS without express written consent.

56. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Plaintiff is an adequate representative of the Classes because his interests are common with the interests of the Classes, and he will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent and experienced in TCPA and class action litigation.

57. **Predominance of Common Questions and Superiority**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ.

P. 23(b)(3)(D). Where class-wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

58. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

59. Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. For the DNC Class the question for all members is: Did Defendants call a putative class member who was registered on the DNC registry? For the Failure to Identify Class, the question for all members is: Did Defendants properly identify themselves? For The Florida Autodialed Class: Did Defendants call a putative class member without authorization using an ATDS? For the Florida Spoofed Calls Class, the question for all members is: Was the originating number on the caller id inaccurate and/or incapable of allowing the class members to call the caller or seller. The common answer to these questions will determine Defendants' liability. Precedent demonstrates these questions can be litigated on a class-wide basis.

**FIRST CAUSE OF ACTION**
Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)(2)
(On Behalf of Plaintiff and the Do Not Call Class)

60. Defendants' telephone solicitations to the residential cellular telephones of Plaintiff, and members of the Do Not Call Class, while on the National Do Not Call Registry constitute a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

61. As a result of each violation of 47 C.F.R. § 64.1200(c)(2), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

62. Because the violations were knowing and willful, the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

63. Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting Defendants from making telephone solicitations to phone numbers on the DNCR.

## SECOND CAUSE OF ACTION
Violations of 47 U.S.C. § 227(b) & 47 C.F.R. § 64.1200(d)(4)
(On Behalf of Plaintiff and the Failure to Identify Class)

64. Defendants' initiation of calls to Plaintiff, and members of the Failure to Identify Class, constitutes a violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(d)(4).

65. As a result of each violation of 47 C.F.R. § 64.1200(d)(4), Plaintiff and members of the Failure to Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

66. Because the violations were knowing and willful, the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

67. Plaintiff and members of the Failure to Identify Class are also entitled to injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting Defendants from making telephone solicitations without identifying the actual name of the person calling and the actual name of the company on whose behalf they are calling.

## THIRD CAUSE OF ACTION
Violations of Fla. Stat. § 501.059 8(a)
(On Behalf of Plaintiff and the Florida Autodialed Class)

68. Defendants' making or knowingly allowing telephonic sales calls using an automated system for the selection or dialing of telephone numbers to Plaintiff, and members of the Florida Autodialed Class, constitutes a violation of Fla. Stat. § 501.059 (8)(a).

69. As a result of each violation of Fla. Stat. § 501.059 (8)(a), Plaintiff and members of the Florida Autodialed Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to Fla. Stat. § 501.059 (10)(a)(2).

70. Because the violations were knowing and willful, the court should award $1,500.00 in statutory damages for each violation, pursuant to Fla. Stat. § 501.059 10(b).

71. Because the violations of Fla. Stat. § 501.059 (8)(a) involve civil litigation, reasonable attorney fees and costs should be awarded, pursuant to Fla. Stat. § 501.059 11(a).

72. Plaintiff and members of the Florida Autodialed Class are also entitled to and seek injunctive relief, pursuant to Fla. Stat. § 501.059 10(a)(1), prohibiting Defendants from making or knowingly allowing telephonic sales calls using an automated system for the selection or dialing of telephone numbers without consent.

## FOURTH CAUSE OF ACTION
Violations of Fla. Stat. § 501.059 8(b)
(On Behalf of Plaintiff and the Florida Spoofed Calls Class)

73. Defendants' making or knowingly allowing telephonic calls to Plaintiff and members of the Florida Spoofed Calls Class using a telephone number that was inaccurate or incapable of receiving telephone calls that connect the original call recipient constitutes a violation of Fla. Stat. § 501.059 8(b).

74. As a result of each violation of Fla. Stat. § 501.059 8(b), Plaintiff and members of the Florida Spoofed Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to Fla. Stat. § 501.059 10(a)2.

75. Because the violations were knowing and willful, the court should award $1,500.00 in statutory damages for each violation, pursuant to Fla. Stat. § 501.059 10(b).

76. Because the violations of Fla. Stat. § 501.059 (8)(b) involve civil litigation, reasonable attorney fees and costs should be awarded, pursuant to Fla. Stat. § 501.059 11(a).

77. Plaintiff and members of the Florida Spoofed Calls Class are also entitled to and seek injunctive relief, pursuant to § 501.059 10(a)(1), prohibiting Defendants from using a telephone number that is inaccurate or incapable of receiving telephone calls.

## RELIEF REQUESTED

78. Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiff as class representative;

    C.    Appointment of the undersigned as counsel for the Classes;

    D.    An order enjoining Defendant as set forth above;

    E.    An award of damages to Plaintiff and the Classes, as allowed by law;

    F.    Reimbursement of attorney fees and costs; and

    G.    Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: August 10, 2022

Respectfully submitted,

/s/ *John Kauffman*
John Kauffman
Florida Bar No. 538205
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
john.kauffman@lawhq.com

*Attorney for Plaintiff*